**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RANDY G. ALLEN,

       Petitioner,

v.                                          Case No. 8:14-cv-718-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

    Petitioner Randy G. Allen, an inmate in the Florida Department of Corrections, filed through counsel a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) and memorandum in support (Dkt. 2).  He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida, in 2008.  Respondent filed a response (Dkt. 6), which raises no challenge to the petition's timeliness.  Allen filed a reply (Dkt. 9).  Upon review, the petition must be denied.

## PROCEDURAL HISTORY

    A jury convicted Allen of one count of lewd molestation.  (Dkt. 8, Ex. 8.)  He was sentenced to life imprisonment.  (Dkt. 8, Ex. 11.)  The state appellate court *per curiam* affirmed his conviction and sentence.  (Dkt. 8, Ex. 14.)  Allen filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Dkt. 8, Ex. 15.)  The state court summarily denied one of Allen's claims and granted an evidentiary hearing on his remaining claims.  (Dkt. 8, Ex. 17.)  Following the evidentiary hearing, the state court

entered a final order denying Allen's postconviction motion.  (Dkt. 8, Ex. 19.)  The state

appellate court *per curiam* affirmed the denial.  (Dkt. 8, Ex. 22.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert.*

*denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody

"in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court

review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court. Under
> § 2254(d)(1), the writ may issue only if one of the following two conditions is
> satisfied–the state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States." Under the "contrary to" clause, a
> federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of law or if

the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court affirmed the denial of Allen's postconviction motion in a *per curiam* decision without a written opinion. This decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82.   Allen bears the burden of overcoming by clear and convincing evidence a state court factual determination.   "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not

to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.),

*cert. denied*, 534 U.S. 1046 (2001).

## DISCUSSION

**Ground One**

 The State charged Allen with committing lewd molestation on his granddaughter,

A.A.  Allen argues that the trial court erred in admitting *Williams* rule evidence[1] through trial

testimony of Allen's daughters.

Before a district court can grant habeas relief to a state prisoner under § 2254, the

petitioner must exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C.

§ 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner

must give the state courts an opportunity to act on his claims before he presents those

claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d

880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a

federal constitutional claim in federal court unless he first properly raised the issue in the

state courts.") (citations omitted).  A state prisoner "'must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process,' including review by the state's court of last

resort, even if review in that court is discretionary."  *Fruitt v. Jones*, 348 F.3d 1355, 1358-59

(11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

---

[1] *Williams* rule evidence is evidence of collateral crimes or acts factually similar to the charged offense that is relevant for a purpose other than showing bad character or propensity, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.  *See Williams v. State*, 110 So.2d 654 (Fla. 1959).  *See also* § 90.404(2)(a), Fla. Stat.

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must

demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *Unitea States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Heaa*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henaerson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Allen does not expressly allege a federal constitutional violation in Ground One. Federal habeas relief may only be granted on the basis that a state prisoner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, a claim that only involves an issue of state law is not cognizable in a federal habeas proceeding. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). Even liberally construing Allen's claim as raising a federal issue, however, it is unexhausted because Allen failed to bring a federal claim when he raised this claim of trial court error on direct appeal. His argument relied solely on Florida law. (Dkt. 8, Ex. 12, pp. 29-36.)

In his reply, Allen asserts that he did raise a federal claim on appeal because he

asserted that the alleged error violated his constitutional right to due process.[2]  However, his appellate brief does not clearly allege error under the United States Constitution, rather than the Florida Constitution.[3]  Allen's failure to fairly present a federal claim to the state appellate court leaves the exhaustion requirement unsatisfied.

State procedural rules do not provide for successive direct appeals.  *See* Fla. R. App. P. 9.140.  Because Allen cannot return to state court to present his federal claim, it is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  In his reply, Allen asserts that the fundamental miscarriage of justice exception applies to overcome the default.  As addressed, this exception requires a petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  *Johnson* explains:

> This exception is exceedingly narrow in scope, as it concerns a petitioner's "actual" innocence rather than his "legal" innocence. *See Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 1502-03, 140 L.Ed.2d 728 (1998); *Murray,* 477 U.S. at 495-96, 106 S.Ct. at 2649 (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon,* 523 U.S. at 559, 118 S.Ct. at 1502-03 (quoting *Schlup,* 513 U.S. at 324, 115 S.Ct. at 865) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected" (internal quotation marks omitted)).

256 F.3d at 1171.  As Allen presents no reliable evidence of his actual innocence not

---

[2] Allen's appellate brief stated, "[i]t is true that [*Williams* rule] allegations are serious and difficult to prove; however, the Appellant still has his constitutional protections and Due Process stands in the way of weak prosecutions."  (Dkt. 8, Ex. 12, p. 33.)

[3] *See* Art. 1, § 9, Fla. Const. ("No person shall be deprived of life, liberty or property without due process of law . . .").

presented at trial, he fails to establish the applicability of the fundamental miscarriage of justice exception.  Accordingly, Ground One is barred from federal habeas review.

**Ground Two**

Allen asserts that the trial court erred in admitting child hearsay statements during trial.  The State introduced evidence of A.A.'s statements through testimony of her aunt, her mother, and Child Protection Team interviewer Melissa Bearden. Section 90.803(23)(a), Fla. Stat., establishes an exception to the rule against hearsay for statements of child victims.

Allen asserts that the introduction of these statements violated his Sixth Amendment right to confront witnesses as addressed in *Crawford v. Washington*, 541 U.S. 36 (2004). *Crawford* provides that under the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine" the declarant. *Id.* at 59.

First, Allen shows no entitlement to relief with respect to Bearden's testimony.  Allen alleges that because the defense had no opportunity to cross-examine A.A. when Bearden interviewed her, A.A.'s statements should not have been admitted through Bearden's testimony.  However, *Crawford* provides that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."  *Id.* at 59 n.9.  The declarant, A.A., testified at trial and underwent cross-examination.  (Dkt. 8, Ex. 7, Vol. II, pp. 331-39.)

Second, assuming that Allen exhausted a federal claim with respect to the testimony

of A.A.'s mother and aunt, he does not show a violation of his right to confrontation.[4]  Allen

conceded that the family members' testimony was not likely to be considered testimonial.

(Dkt. 8, Ex. 12, p. 40.)  *See Davis v. Washington*, 547 U.S. 813, 821 (2006) ("Only

[testimonial statements] cause the declarant to be a 'witness' within the meaning of the

Confrontation Clause.").  Moreover, again, A.A. was subject to cross-examination at trial.

Accordingly, Allen fails to establish that the state appellate court's rejection of his

claim was contrary to or an unreasonable application of controlling Supreme Court

precedent or an unreasonable determination of the facts.  He is not entitled to relief on

Ground Two.[5]

**Ground Three**

Allen contends that trial counsel was ineffective for failing to request an independent

pre-trial evaluation of A.A.'s competency to testify.  A.A. was four years old at the time of

the offense and six years old when she testified at trial.

Claims of ineffective assistance of counsel are analyzed under the test set forth in

---

[4] Although he did not raise a specific federal constitutional argument when discussing family members' testimony, Allen cited the Sixth Amendment's Confrontation Clause in his introductory argument to this ground on appeal.  (Dkt. 8, Ex. 12, pp. 38, 40-42.)

[5] To the extent Allen may attempt to challenge the admission of the hearsay evidence under the Florida evidence code, he cannot obtain relief.  He does not characterize this aspect of the claim as federal in nature in his habeas petition.  Even interpreting his petition as raising a federal claim and assuming that he exhausted a federal challenge on appeal, his claim rests on a matter of state law that cannot sustain federal habeas relief.  Generally, a state court evidentiary ruling cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)).  The category of evidentiary errors that violate "fundamental fairness" is very narrow. *Dowling v. United States*, 493 U.S. 342, 352 (1990).  "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.1998) (quoting *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983)).  Allen's generalized argument that the hearsay testimony was erroneous is insufficient to make this showing.  He does not demonstrate that the state court's decision was contrary to or an unreasonable application of controlling Supreme Court precedent, or was based on an unreasonable determination of the facts.

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690.  However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Allen must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 694.

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of

ineffectiveness claims on either of its two grounds.").

The Florida Supreme Court has explained with respect to child witnesses:

[T]he prime test of testimonial competence of an infant witness is his or her intelligence, rather than his or her age, and, in addition, whether the child possesses a sense of obligation to tell the truth. . . . It is the established law of this state that if an infant witness has sufficient intelligence to receive a just impression of the facts about which he or she is to testify and has sufficient capacity to relate them correctly, and appreciates the need to tell the truth, the infant should be permitted to testify.

*Lloyd v. State*, 524 So.2d 396, 400 (Fla. 1988).

Under Florida law, the "trial judge has the discretion to decide whether a witness of tender age is competent to testify." *Floyd v. State*, 18 So.3d 432, 444 (Fla. 2009). *See also Lloyd*, 524 So.2d at 400. Whether to appoint an independent expert to examine a witness is within the court's discretion. *Gray v. State*, 640 So.2d 186, 192 (Fla. 1st DCA 1994) ("The majority rule which has been followed in Florida is that a court has the discretionary power to order a psychological examination under certain conditions."). Furthermore, "[p]sychological examinations may be ordered where the victim's credibility is at issue." *Jenkins v. State*, 668 So.2d 1003, 1004 (Fla. 2d DCA 1996) (citing *Camejo v. State*, 660 So.2d 242 (Fla. 1995)). However, "[b]efore ordering an independent psychological evaluation of a victim where the victim's credibility is at issue, the trial court must determine whether there is strong and compelling evidence supporting the need for the evaluation." *Jenkins*, 669 So.2d at 1004 (citing *Camejo*, 660 So.2d at 243).

After jury selection, but before opening statements, the trial court conducted a hearing to determine A.A.'s competency to testify. In his federal habeas petition, Allen points to several of A.A.'s responses in support of his ineffective assistance claim. First, when asked the difference between real and make believe, she stated, "I kind of forget."

(Dkt. 8, Ex. 7, Vol. I, p. 217).  Second, A.A. said, "I don't know" when asked what happens when people in courtrooms tell a lie.  (*Id.*, p. 219.)  Thus, Allen asserts that A.A. did not understand the consequences of lying.

After an initial round of questioning, the trial judge indicated that whether to allow A.A. to testify was an extremely difficult choice.  (*Id.*, p. 221.)  Accordingly, A.A. returned to the courtroom for a second round of questioning.  (*Id.*, pp. 224-27.)   After this questioning, the trial judge stated he would talk to A.A. again and instruct her on telling the truth, to which counsel objected.  (*Id.*, pp. 250-51.)  The court then rejected counsel's motion to continue the case for A.A. to undergo examination by a qualified expert, finding that this request "should have been made a long time ago." (*Id.*, p. 254.)  After additional questioning and instruction, the court ruled that A.A. was permitted to testify.  (Dkt. 8, Ex. 7, Vol. II, p. 266.)

Allen alleged in his postconviction motion that counsel was ineffective for not requesting a pre-trial independent psychological evaluation of A.A. that would have assisted the court in deciding whether to permit A.A.'s testimony.  The state court denied Allen's claim following an evidentiary hearing:

> 3.  Trial counsel . . . is a board certified criminal trial attorney with many years of experience in handling child-sex cases such as the instant case in which a child of tender years is alleged to have been the victim.  What confronted him in this case is the policy of the prosecutor's office which foreclosed any plea bargaining if the defendant seeks to depose the victim.  This policy results in the protection of the child-victim from depositions, but also results in last minute depositions and a lack of pre-trial disclosure of competency issues as in this case. [Counsel] informed the defendant of this policy and the strategic decision was made to delay the taking of the child's deposition in order to possibly plea bargain an outcome.
>
> 4.  [Counsel] testified that nothing in the pre-trial discovery disclosures suggested a lack of competency as a witness for the victim or supported

grounds for a motion to compel the victim-child to submit to a court-ordered mental and psychological evaluation. The defendant testified at these proceedings that the victim was a typical child of 4 years of age at the time of the alleged offense, and was 6 years of age at the more relevant time of giving her courtroom testimony. The very detailed and exhaustive order of Judge Raiden dated 13 June 2008 following the hearing in regards to the admissibility of child hearsay noted that the mother of the victim described the victim as a normal child, and the trial judge noted nothing in the video recording of the forensic interview conducted by CPT Melissa Bearden which suggested a lack of competency but expressly did not address the issue in the order finding the child hearsay admissible. The CPT report by M. Bearden, a forensic child interview specialist, was released to defense counsel by court order and that report summarized an interview of the child-victim on 03 December 2006 in which M. Bearden reported that the child "was able to distinguish between a fact and non-fact and could tell the difference between the truth and a lie". The court file reflects that all persons, except the child, were submitted to defense deposition in September 2007. The Court finds from this review of the record that nothing alerted trial counsel to the need for a pre-trial motion for evaluation of the competency of the child and there was simply no evidence to make the required showing if the motion had been filed.

5. The child's deposition was taken after jury selection on Monday, 08 September 2008 beginning at 4:15 p.m. and ending at 4:44 p.m. according to the notice in the court file and the transcript of the video-taped deposition also in the court file. The Court has read the child's deposition transcript. The child deposed that she knew the difference between the truth and a lie and that she would answer questions truthfully. Her memory was often faulty but nothing suggests she did not sense an obligation to tell the truth as she recalled it. The weight to be given to her testimony is for the jury to decide once the trial judge makes the threshold finding of competency. Nothing in this post-jury selection deposition supports a motion for mental evaluation, but rather supports the report all involved that she is a normal child. The Court finds that trial counsel was not ineffective for failing to file a pre-trial motion for evaluation of the child-victim.

6. Even assuming the evidence supports a finding that trial counsel was ineffective for failing to file a pre-trial motion for evaluation of this child, there has been no showing of prejudice. It would only be prejudicial if the motion were granted and the examining psychologist rendered an opinion that the child did not have the intellect to sense the moral obligation to testify truthfully as to observed events, and the trial judge agreed with that opinion.

(Dkt. 18, Ex. 19, pp. 101-03) (court's footnotes omitted).

The state court's order accurately reflects counsel's evidentiary hearing testimony. Additionally, counsel testified that he and Allen decided not to depose A.A. prior to trial to avoid cutting off potential plea negotiations. (*Id.*, p. 80.)  Allen testified at the evidentiary hearing that he was concerned about A.A.'s ability to testify, but that he did not discuss with counsel how to establish that A.A. was not competent to testify or the possibility of having her evaluated.  (Dkt. 8, Ex. 18, pp. 53, 56.)

The record supports the denial of this claim.  It indicates that counsel had no information prior to trial that caused him to question A.A.'s competency to testify. Therefore, according to counsel's testimony, the only way A.A.'s competency might have emerged as an issue would have been through a pre-trial deposition.  However, counsel testified, Allen agreed with the decision not to take her deposition because it would prevent plea negotiations.[6]

The state court found that the decision to delay taking A.A.'s deposition was strategic. In analyzing the claim under *Strickland*, the focus is on whether counsel's strategic decision was a reasonable one.  *Putman v. Head*, 268 F.3d 1223 (11th Cir. 2001) ("Moreover, '[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that 'the

---

[6] To the extent the court's rejection of Allen's claim implicitly found credible the testimony of trial counsel, the credibility determination is presumed correct.  *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].");  *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."). Allen does not overcome the presumption of correctness.

proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Strickland*, 466 U.S. at 688).    Allen fails to show that counsel made an unreasonable strategic decision not to take a pre-trial deposition of A.A.[7]  Counsel therefore would have had no basis to seek an independent evaluation of A.A. Accordingly, Allen fails to show deficient performance by counsel.

Additionally, Allen does not show prejudice because any assertion that an independent examination would have led the court to declare her incompetent to testify is speculative. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).   A.A.'s answers during the competency evaluation indicate that she knew the difference between the truth and a lie and that it is right to tell the truth and wrong to tell a lie. (Dkt. 8, Ex. 7, Vol. I, pp. 213, 217.)  When asked what she thought would happen if she told a lie, she answered, "I would get in trouble." (*Id.*, p. 220.)  She also promised to tell the

---

[7]  The state court's order provides that counsel deposed A.A. after jury selection.   During trial proceedings, he discussed his reasons for waiting until that time to conduct the deposition:

THE COURT: Let the record reflect; let these folks out here understand this: Deposing this victim on the eve of trial was probably the only time to do it.

[COUNSEL]: Yes, sir.  And - - and that - - and that's done for two reasons.  Number one, to make sure that the child's memory is crystallized right around the time that they testify.  And, number two, because of - - and - - and I may be - - I may be protecting myself for the record, but the other reason is is that the Office of the State Attorney, Tenth Judicial Circuit, has an unwritten policy that says once a child victim in these types of cases is deposed - -

THE COURT: You don't get to do it again.

[COUNSEL]: Well, plea negotiations are withdrawn.  They will not make an offer once the child's deposed.

THE COURT: Also, you can't depose them again.

[COUNSEL]: True.

(Dkt. 8, Ex. 7, Vol. I, p. 203.)

truth. (*Id.*, pp. 215, 225.)  Allen does not demonstrate that A.A. lacked intelligence to understand and relay the facts or that she lacked an appreciation of her obligation to tell the truth.  Allen does not show that the state court's rejection of his claim was an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground Three.

**Ground Four**

Allen alleges that trial counsel was ineffective for failing to object to improper prosecutorial statements during closing arguments.  The state court summarily denied this claim when Allen raised it in his postconviction motion.  (Dkt. 8, Ex. 17.)  However, he did not challenge the denial of this claim on collateral appeal, rendering it unexhausted.  (Dkt. 8, Ex. 20.)  Florida Rule of Appellate Procedure 9.141(b)(3) governs collateral proceedings when a motion has been granted or denied after an evidentiary hearing was held on one or more claims.  In *Cunningham v. State*, 131 So.3d 793 (Fla. 2d DCA 2012), addressing the application of this Rule, "Florida's Second District Court of Appeal clarified that [between December 2000 and September 2010], where the state post-conviction court had summarily denied some grounds, but denied others after an evidentiary hearing, the Second District would consider the merits, without briefing, of *all* grounds that the state post-conviction court had summarily denied." *Bucklon v. Sec'y, Dep't of Corr.*, 606 Fed. App'x 490, 492 (11th Cir. 2015) (emphasis in original).

However, the Second District Court of Appeal explained that it changed its policy so that as of October 2010 "[i]f any ground is resolved after an evidentiary hearing, we require the appellant to process the appeal under rule 9.141(b)(3)." *Cunningham*, 131 So.3d at 795. In Florida, an appellant is considered to have abandoned claims that were not briefed

with specific argument. *Simmons v. State*, 934 So.2d 1100, 1111 n. 12 (Fla. 2006) (citing *Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997)).

Because Allen's collateral appeal was filed in 2013, the Second District Court of Appeal treated it under the procedures set forth in *Cunningham*. His failure to present this claim to the state appellate court results in a lack of exhaustion for purposes of federal habeas review. Allen cannot return to state court to file a successive, untimely postconviction appeal. *See* Fla. R. App. P. 9.141. Accordingly, this claim is procedurally defaulted. Allen does not argue or establish that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. Ground Four is therefore barred from federal habeas review.

Any arguments not specifically addressed herein are deemed to be without merit. It is therefore

**ORDERED** that Allen's petition for writ of habeas corpus (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Allen and to close this case.

It is further **ORDERED** that Allen is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Allen "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues

presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Allen has not made this showing.  Finally, because Allen is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

      **ORDERED** in Tampa, Florida, on December 29, 2016.

Charlene Edwards Honeywell
United States District Judge

Copy to:

Counsel of Record